UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN BUFFINGTON, NANCY HELMOLD, SARAH KRAMER, and CYRINDA CRAIG, on behalf of themselves and all others similarly situated,

                Plaintiffs,

-against-

SPAY, INC. d/b/a STACK SPORTS,

                Defendant.

**OPINION AND ORDER**

24-CV-02541 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Steven Buffington, Nancy Helmold, Sarah Kramer, and Cyrinda Craig (collectively, "Plaintiffs") commenced this putative class action against SPay, Inc. d/b/a Stack Sports ("Stack Sports" or "Defendant") on April 9, 2024. (Doc. 1, "Compl."). Before the Court is Defendant's motion to compel arbitration pursuant to the Federal Arbitration Act and to stay proceedings. (Doc. 11; Doc. 12; Doc. 13; Doc. 14, "Def. Br."). Plaintiffs opposed the motion (Doc. 21, "Pl. Br."), Defendant filed its reply (Doc. 23, "Reply"; Doc. 24), and Plaintiffs thereafter filed sur-reply with the Court's leave (Doc. 29, "Sur-Reply"; Doc. 30).

For the reasons set forth below, Defendant's motion to compel arbitration is DENIED.

## BACKGROUND

Stack Sports offers sports management technology services to youth sports organizations, providing youth sports leagues with an online enrollment platform through its "Sports Connect" service. (Compl. ¶¶ 3, 23). The youth sports organization using the software instructs parents or guardians that they must use Sports Connect service to register their children in the organization's sports offerings. (*Id*. ¶¶ 3, 49). When a consumer registers their child for a sport using software provided by Sports Connect, the consumer must create an account that is powered by Sports

Connect software. (*Id.* ¶ 27). A service fee is then assessed on the registrations completed via the Sports Connect software. (*Id.* ¶¶ 1, 3). Plaintiffs, parents who registered their children in various youth sports organizations, were charged the service fee by Defendant. (*Id.* ¶¶ 51-69). They contend that the service fee is not tethered to any actual service or expense, it is a pure-profit generator, and it is not disclosed to consumers until after the consumer has already gone through several steps to commit to the purchase of registering for the youth sport. (*Id.* ¶¶ 34-41).

Plaintiffs bring claims against Defendant for violations of the consumer fraud statutes in New York, Florida, Illinois, and Iowa, and for unjust enrichment. (*Id.* ¶¶ 86-137). Defendant moves to compel arbitration of Plaintiffs' claims, arguing that Plaintiffs agreed to Defendant's Terms of Service in connection with their use of the software, and that by agreeing to the Terms, Plaintiffs agreed to mandatory arbitration for these disputes. (*See generally* Def Br.).

## **STANDARD OF REVIEW**

"An arbitration clause is enforceable if (a) the parties have entered into a valid agreement to arbitrate, and (b) the dispute at issue comes within the scope of the arbitration agreement. State contract law governs this analysis." *Behrens v. JPMorgan Chase Bank, N.A.*, No. 21-2603, 2024 WL 1090856, at *3 (2d Cir. Mar. 13, 2024) (citing *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)).[1] "In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable to a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Thus, when ruling on a motion to compel arbitration, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions,

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

answers to interrogatories, and admissions on file, together with affidavits." *Id.* "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id*.

"When moving to compel arbitration, '[t]he party seeking . . . arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made.'" *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). "Arbitration is 'a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration.'" *DDK Hotels, LLC v. Williams-Sonoma*, Inc., 6 F.4th 308, 316 (2d Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.")).

## ANALYSIS

Defendant states that there is "no dispute that the parties have entered into a binding agreement to arbitrate pursuant to the express Terms and Plaintiffs' admitted use of [Sport Stacks'] licensed software." (Def. Br. at 6). They support this assertion by arguing that each Plaintiff was notified of the Terms of Service in connection with their use of the software, and that by agreeing to the Terms, Plaintiffs agreed to mandatory arbitration of their claims. (*Id*. at 8-9). Plaintiffs counter that Defendant has failed to meet its initial burden of demonstrating that an agreement to arbitrate was made and has not proven it provided Plaintiffs notice of any agreement to arbitrate. (Pl. Br. at 9-23). Defendant, in reply and for the first time, submitted payment records demonstrating the dates on which it contends Plaintiffs accessed the youth sports websites at issue, together with archived copies of registration webpages. (Doc. 24). The registration pages purport

to prove that Plaintiffs were notified that by creating their accounts, they agreed to the Terms of Service, which include a mandatory arbitration provision. As a general matter, "new arguments, declarations, and exhibits offered for the first time in its reply" need not be considered by the Court. *Barrows v. Brinker Rest. Corp.*, No. 19-CV-00144, 2020 WL 1511077, at *2 (N.D.N.Y. Mar. 30, 2020). Because, however, Plaintiffs requested and were granted leave to file sur-reply, and took the opportunity to respond thereto, the Court considers all the evidence properly in the record before it.

The complete record before the Court is infected with "a disputed question of material fact, such that the making of the arbitration agreement is in issue." *Barrows*, 36 F.4th at 49. The core issue—whether Plaintiffs agreed to arbitration—is sharply disputed, as Defendant contends that Plaintiffs did so by creating their accounts on the sports organizations' registration pages while Plaintiffs argue the webpages did not contain any notification that by creating their accounts they would be agreeing to Defendants' Terms of Service and mandatory arbitration provision therein. The dispute stems from Defendant's production of three archived copies of webpages (Doc. 24-2, Doc. 24-3, Doc. 24-4), and Plaintiffs' production of screenshots of webpages and four sworn statements, one from each of the named Plaintiffs (Doc. 21, Doc. 30).

Defendant's moving papers included the Declaration of Todd Reynolds, the Chief Technology Officer, who stated that Defendant's latest modified version of its Terms of Service were created on or about July 9, 2021, that the Terms of Service "remain in effect on its website," and that "[s]ince that time, the Terms of Service have been accessible at https://stacksports.com/legal-terms." (Doc. 13 ¶ 4). Defendant did not, in its moving papers, allege or argue that Plaintiffs were actually notified of the existence of the Terms of Service. Defendant then, in reply, produced archived copies of webpages in an effort to demonstrate that Plaintiffs had

4

notice of the Terms of Service and that by creating their accounts they agreed to them, including the mandatory arbitration provision. The webpages produced by Defendant are the Spring Hill NFL Flag Football LLC registration page as it appeared on September 23, 2021 (Doc. 24 ¶ 7), the Kennedy Park Little League registration page as it appeared on March 8, 2021 (*id*. ¶ 11), and the Old Skewl Sports registration page as it appeared on May 19, 2021 (*id*. ¶ 15). None of the aforementioned dates are dates on which Plaintiffs have alleged they registered through those youth sports organizations.[2] Although Defendant established that its Terms of Service have remained consistent since July 9, 2021 (Doc. 13 ¶ 4), Defendant did not offer proof that those webpages remained consistent since 2021.

Plaintiffs allege that Craig registered her child to play flag football through the NFL Flag Football sports organization in October 2023 (Compl. ¶ 57); that Helmold registered her children to play baseball through Kennedy Park Little League on or about February 8, 2024 (*id.* ¶ 61) and through St. Cajetan Grammar School Athletics on March 4, 2024 (*id*. ¶ 64); that Buffington registered his child for baseball through youth sports organization Otisville Little League on December 28, 2021 (*id*. ¶ 54) and through Old Skewl Sports on February 26, 2022 (*id*. ¶ 51); and that Kramer registered her children to play softball through youth sports organization Sergeant Bluff Girls Softball on or about February 11, 2024 (*id*. ¶ 67). Plaintiffs produced screenshots of the webpages for Old Skewl Sports, Sergeant Bluff Girl's Softball, Spring Hill NFL Flag Football, and Kennedy Park Little League as they appeared on July 17, 2024. (Doc. 21-1). Plaintiffs also produced screenshots of each screen encountered by a consumer when creating an account on the website of Kennedy Park Little League on September 18, 2024. (Doc. 30). Plaintiffs further

---

[2] Nor are they dates on which Defendant contends the Plaintiffs first accessed the webpages and created their accounts. (*See* Doc. 21-1; Doc. 24 ¶¶ 5, 7, 9, 11, 13). Defendant was "unable to identify any archival records indicating the appearance of Sergeant Bluff Girls Softball registration page." (Doc. 24 ¶ 19).

produced signed declarations swearing, in sum and substance, that they were not aware of Stack Sports' Terms of Service when they registered through the respective youth sports organizations, were not aware that by accessing the websites they were agreeing to arbitration, and that they never agreed to arbitrate their claims. (Doc. 21-1, Doc. 21-2, Doc. 21-3, Doc. 21-4, Doc. 21-5).

The screenshots produced by Defendants reveal a notification to the consumer that "by clicking Create Account you agree to the Sports Connect Terms of Service[.]" (Doc. 24-2, Doc. 24-3, 24-4). The screenshots produced by Plaintiffs, however, do not show any such notice to the consumer. (Doc. 30). The parties dispute what Plaintiffs actually saw on the webpages on the dates they utilized the service. Together, Plaintiffs' evidence makes clear that there is a triable issue of fact as to whether Plaintiffs manifested their assent to arbitration. Defendant's offer of evidence only fortifies the reality that a genuine issue of fact exists here as to whether Plaintiffs were on notice of Defendant's Terms of Service and mandatory arbitration provision contained therein.

As the Second Circuit has instructed, "[a]t this stage . . . in deciding a motion to compel arbitration, as for a summary judgment motion, a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact. . . . [T]he place to sort it out is, as the FAA provides, at 'trial.'" *Barrows*, 36 F.4th at 54 (quoting 9 U.S.C. § 4).

## **CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to compel arbitration and stay proceedings.

Defendant shall file its Answer to the Complaint within twenty-one (21) days of the date of this Opinion & Order pursuant to the Court's June 25, 2024 Order (Doc. 16).

A conference is scheduled for **April 1, 2025 at 12:00 p.m.** to be held at the White Plains courthouse concerning the scheduling of a jury trial on the issue of whether an agreement to arbitrate was made.

The Clerk of Court is respectfully directed to terminate the motions pending at Doc. 11.

**SO ORDERED.**

Dated:   White Plains, New York
        February 5, 2025

_____
PHILIP M. HALPERN
United States District Judge