December 12, 2025

**VIA ECF**

Hon. Philip M. Halpern
United States District Court
for the Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601

**Re:**   *Steven Buffington, et al. v sPay, Inc. d/b/a Stack Sports,* **No. 24-cv-2541**

Dear Judge Halpern:

We write pursuant to the Court's December 3, 2025 Order (ECF No. 78) to (1) advise that sPay does not maintain confidentiality designations for documents filed under seal (ECF Nos. 53, 69); (2) inform the Court that sPay maintains its request for permission to move for summary judgment because the undisputed evidence—together with Plaintiffs' admissions—establishes that there is no genuine issue of material fact that each Plaintiff agreed to terms of service requiring arbitration, and to advise the Court that there is caselaw that addresses the concerns raised by the Court at the December 3rd conference with respect to summary judgment; and (3) respectfully request the Court set the summary judgment briefing schedule set forth in Section III.

**I.      Confidentiality Designations**

sPay does not maintain confidentiality designations for the documents filed under seal in connection with Plaintiffs' motions (ECF Nos. 53, 69). Accordingly, sPay consents to the public filing of those documents.

**II.     sPay Seeks Permission to Move for Summary Judgment**

With the Court's permission, sPay intends to move for summary judgment on arbitrability. We respectfully submit that the record now contains all the evidence and admissions necessary to establish sPay's entitlement to summary judgment on the issue of arbitrability as a matter of law: there is no genuine dispute of material fact regarding: (i) when Plaintiffs created or logged into their accounts; (ii) what those user interfaces looked like during the four iterations of the time periods that Plaintiffs created or logged into their accounts; and (iii) that the terms of service throughout the entire time period always contained an enforceable agreement to arbitrate.

As set forth below, sPay has also provided authority and support that addresses the concerns raised by the Court at the December 3rd conference with respect to summary judgment; specifically with respect to credibility, drawing inferences, and Partner League affiliation.



Hon. Philip M. Halpern
December 12, 2025
Page 2

A.  Governing Standard for Clickwrap Agreements to Arbitrate

Plaintiffs misstated the standard for enforceability of arbitration provisions at the December 3, 2025 conference, citing *Lipsett v. Popular Bank* to argue that actual knowledge of an arbitration clause is required.  That is not correct.  *Lipsett* does not impose a rule requiring actual knowledge or proof that individuals actually read the agreement's arbitration provision. *See Lipsett v. Popular Bank*, No. 22-3193-cv, 2024 WL 111247, at *2 (2d Cir. Jan. 10, 2024). Instead, in *Lipsett,* the Second Circuit reaffirmed that enforceability turns merely on whether the terms were presented in a "clear and conspicuous way" and whether the user manifested assent under the totality of the circumstances—not on proof of actual notice. *Id.*

The Second Circuit has made clear that in the internet context, clickwrap agreements similar to those used by sPay are enforceable where the notice is clear and the user clicks to proceed, even if the user did not read the terms of service.  *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) ("We have . . . recognized that an offeree's manifestation of assent to an offeror's terms looks different for consumer contracts formed online, in which terms are usually unnegotiated and consumers often proceed without reading the fine print.").

Importantly, under Second Circuit law, to prove that Plaintiffs agreed to terms of service requiring arbitration, Defendant need only show the following two items:

a.  Plaintiffs manifested assent by clicking through a reasonably conspicuous interface; and

b.   the terms of service in effect at the time contained a mandatory arbitration provision.

*Edmundson*, at 703–04 (2d Cir. 2023) (clickwrap enforceable where notice is conspicuous and assent is manifested by clicking).

Here, there is no genuine dispute of material fact with respect to whether (i) Plaintiffs manifested assent by clicking through a reasonably conspicuous interface; and (ii) the terms of service in effect at the time contained a mandatory arbitration provision.

B.      Plaintiffs Admit Their Own Registration History

By failing to deny ¶ 18 of Defendants' Rule 56.1 Statement, Plaintiffs are deemed to have admitted the accuracy of indisputable business records that show exactly when each Plaintiff registered with a league that Plaintiffs admit used Sports Connect or its predecessor, Dick's TSHQ. **Exhibit A**, DX 19; SPAY00001238.  These business records establish that, in total, Plaintiffs registered with leagues using Sports Connect or its predecessor **52 times**. *Id.*

Moreover, Plaintiffs confirmed the accuracy of these records at their depositions:

- **Buffington**: Aug. 27, 2025 Dep. Tr. at 28:9–30:13; 35:5–6; 64:25–65:11 (acknowledging sPay's records accurately listed his registrations through Sports Connect/Dick's TSHQ);

- **Helmold**: Aug. 27, 2025 Dep. Tr. at 26:2–19 (same for Ms. Helmold);

- **Craig**: Aug. 28, 2025 Dep. Tr. at 28:10–12 (same for Ms. Craig);

- **Kramer**: Aug. 29, 2025 Dep. Tr. at 32:5–33:12 (same for Ms. Kramer).

And, at the December 3, 2025 hearing, Plaintiffs' counsel confirmed these facts:

> THE COURT: The only question I am asking you is when did your client Buffington register his account with the defendant, please?
>
> . . .
>
> MR. REESE: I believe it was January 31st of 2018.
>
> THE COURT: Okay. Do you agree with that?
>
> MR. KLETTER: Absolutely.
>
> . . .
>
> THE COURT: Mrs. Helmold, when did she create her account?
>
> MR. KLETTER: January 15, 2019.
>
> THE COURT: Mr. Reese?
>
> MR. REESE: That's my understanding, yes.

**Exhibit B**, Dec. 3, 2025 Pre-Motion Conference Tr. at 12:2–20.

> THE COURT: While you are checking that, the next plaintiff is Cyrinda Craig.
>
> MR. KLETTER: Yes.
>
> THE COURT: And when was that account created?
>
> MR. KLETTER: December 28, 2020. I'm sorry -- yes, 2020.
>
> THE COURT: December 28, 2020.
>
> Mr. Reese, do you agree with that?
>
> MR. REESE: That's our understanding, yes.

*Id.* at 13:11-19.



Hon. Philip M. Halpern
December 12, 2025
Page 4

    C.   <u>Plaintiffs Admit that the Account Creation Screens were Enforceable Clickwrap When Plaintiffs Buffington, Helmold, and Craig Created Accounts</u>

Plaintiffs' own admissions foreclose any genuine dispute. In their Rule 56.1 responses, Plaintiffs expressly admitted that the account creation screen during the DSG Period (January 31, 2018 – November 7, 2019) and the Sports Connect Teal Period (November 7, 2021 until at earliest, October 7, 2021)—which covers the time period when Plaintiffs admit that Mr. Buffington, Ms. Helmold, and Ms. Craig first created accounts and completed registrations—were clickwrap interfaces requiring assent to the Terms of Service. Specifically, in Paragraph 18, Plaintiffs admitted that: "Customers were only confronted with the 'By clicking Create Account you agree to the Sports Connect Terms of Service, Privacy Policy, License Agreement and Children's Privacy Policy' language during the first and second iterations of the account creation process," which Plaintiffs have stipulated refer to the DSG and Sports Connect Teal periods. **Exhibit C**, ECF No. 60-1, Rule 56.1 Statement, Response to ¶ 18.

A comparison of the screen from the DSG Period and the similar screen found enforceable in *Garcia v. Nabfly, Inc.*, 2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024) confirms that Plaintiffs manifested their assent through an enforceable clickwrap agreement.






Hon. Philip M. Halpern
December 12, 2025
Page 5

Left image from *Garcia*, at *2; right image screenshot from Feb. 8, 2018 demonstration video during the DSG Period, SPAY00000745 at 14:49.[1]

Likewise, a comparison of the screen from the Sports Connect Teal Period and the enforceable screen from *Garcia* confirms that Plaintiffs manifested their assent through an enforceable clickwrap agreement.




Left image from *Garcia*, 2024 WL 1795395, at *2; right image screenshot from Nov. 20, 2019 demonstration video during the Sports Connect Teal Period, SPAY00000112 at 0:27.[2]

    D. <u>Plaintiffs Admit that the Login Screen was Enforceable Clickwrap When Plaintiff Kramer Logged Into Her Account to Register Her Children in 2025</u>

Due to their failure to substantively respond, Plaintiffs are deemed to have admitted that Ms. Kramer (as well as Buffington and Helmold) logged into her existing account and registered a child with a Sports Connect league (Seargent Bluff Girls Softball) on February 21, 2025. **Exhibit C,** Rule 56.1 Statement ¶ 39.

---

[1] sPay has produced to Plaintiffs 13 similar screenshots from between February 8, 2018 and October 21, 2019, which are compiled as DX 3.

[2] sPay has produced to Plaintiffs 44 similar screenshots from between November 20, 2019 and October 25, 2021, which are compiled as DX 8.



Hon. Philip M. Halpern
December 12, 2025
Page 6

Due to their failure to substantively respond, Plaintiffs further are deemed to have admitted that when logging into an account during the Sports Connect Current SSO Period (after February 5, 2025), customers are required to click "Continue" above the text "By choosing 'Continue,' you agree to the Stack Sports Privacy Policy and Terms of Service." *Id.* ¶ 36.

Again, a comparison with the screen from the Sports Connect Current SSO Period with the enforceable screen from *Garcia* confirms that Plaintiffs manifested their assent through an enforceable clickwrap agreement.




Left image from *Garcia*, 2024 WL 1795395, at *2; right image screenshot from Aug. 29, 2025 video from Sergeant Bluff Girls Youth Softball registration video, SPAY00001217 at 0:10.[3]

Ms. Kramer is bound by her February 21, 2025 agreement to arbitrate under *Holick*. *See* **Exhibit A** at Tab, "Plaintiffs' Completed Trans." Rows 52-53. The Second Circuit in *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 397 (2d Cir. 2015), held that a broad arbitration clause

---

[3] sPay has produced to Plaintiffs similar screenshots of the login process for each of the four Sports Connect Partner Leagues that Plaintiffs have registered with during the Sports Connect Current SSO Period, compiled as DX 29.



without temporal limitation applies to all disputes touching matters covered by the agreement, even if the underlying facts predate the agreement. The court explained that "broad arbitration provisions that contain no express temporal limitation can apply to claims that arose prior to the execution of the arbitration agreement." *Id.* at 397–98.

Applying *Holick* here, Kramer's recent click-through during the Current SSO Period created a binding agreement to arbitrate "any dispute . . . arising out of or relating to" her use of Sports Connect. That language, like the clause in *Holick*, is broad and contains no temporal limitation. Under *Holick*, this single acceptance binds Kramer to arbitrate all claims connected to her use of Sports Connect, including claims predating her most recent registration.  This same logic applies to Buffington and Helmold who also registered in the Current SSO Period.  *See* **Exhibit A** at Tab, "Plaintiffs' Completed Trans." Rows 22, 47-49.

E.  <u>All Versions of the Terms of Service Contained Mandatory Arbitration Provisions</u>

Every version of the Terms of Service since at least March 2017 has contained a mandatory arbitration provision. Plaintiffs failed to deny ¶ 5 of the Rule 56.1 Statement and, therefore are deemed to have admitted that "[b]etween at least March 24, 2017 and the present, the Terms of Use or Terms of Service under Sports Connect and DSG always contained mandatory arbitration provisions."  **Exhibit C,** Rule 56.1 Statement ¶ 5.

Nor could they plausibly deny the truth of this assertion, as sPay has proven that the terms of service in effect always contained binding arbitration provisions:

- **DSG Terms of Use (Mar. 24, 2017–Aug. 23, 2019):** "You and DICK'S each agree that any dispute, claim or controversy . . . shall be determined by binding arbitration before one arbitrator." *Id.* ¶ 8.
- **Sports Connect Terms of Service (Aug. 23, 2019 to Present):** "We and you each agree to resolve any claim, dispute, or controversy . . . by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect." *Id.* ¶¶ 11, 14.

F.  <u>Credibility and Inference Concerns</u>

At the December 3rd conference, the Court expressed its view "that I have to infer that that sales proof that you have was actually sufficient proof that that was the screen shot that these people used on those days. I have to infer that because I can't establish that other than by the belief of this witness." **Exhibit B**, Dec. 3, 2025 Pre-Mot. Conf. Tr at 58:1–5.  While the Court correctly stated that it cannot "adjudicate [Mr. Prior's] credibility on a summary judgment," courts have long held that Plaintiffs' generalized credibility challenges, *without supporting evidence*, cannot create a genuine issue of material fact sufficient to defeat summary judgment.  **Exhibit B**, Dec. 3, 2025 Pre-Mot. Conf. Tr. at 45:20-21.

While courts cannot take sides in "he said, she said" questions that depend on credibility determinations on summary judgment, unsupported attacks on credibility do not create a triable issue. "[B]road conclusory attacks on the credibility of a witness without more [are] insufficient



to raise a genuine issue of material fact that would defeat a motion for summary judgment." *Airborne Wireless Network*, 2023 WL 5938527, at *6 (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012)); *see also U.S. Sec. & Exch. Comm'n v. Saw*, No. 23 Civ. 6573 (PGG), 2025 WL 2105903, at *13 (S.D.N.Y. July 25, 2025) (rejecting generalized credibility challenges absent evidence creating a material issue); *Desia v. GE Life & Annuity Assurance Co.*, 350 F. App'x 542, 544 (2d Cir. 2009); *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) (claims may be dismissed where plaintiff's version "is in such discord with the record evidence as to be wholly fanciful").

For example, in *Saw*, the SEC moved for—and obtained—summary judgment that the defendant was civilly liable for securities fraud. *U.S. Sec. & Exch. Comm'n v. Saw*, No. 23 Civ. 6573 (PGG), 2025 WL 2105903, at *13 (S.D.N.Y. July 25, 2025). The court rejected the defendant's argument that deposition testimony presented by the SEC to support defendant's liability presented "serious credibility issues," holding that "[b]road conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment." *Id.* at *10. The court further explained that arguments about credibility are "not evidence," and "contentions without evidence cannot defeat summary judgment." *Id.* (citing *Levi v. Commonwealth Land Title Ins. Co.*, No. 09 Civ. 8012 (SHS), 2011 WL 4542904, at *4 (S.D.N.Y. Sept. 30, 2011)).

The Second Circuit is clear: once the moving party comes forward with competent evidence establishing all elements of its claim or defense, the non-movant must respond with admissible "hard evidence." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Conclusory allegations or unsubstantiated speculation do not suffice. *See also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (affidavits must be based on personal knowledge and set out admissible facts); *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); Fed. R. Civ. P. 56(c)(1) (requiring citations to specific record evidence).

Here, Defendant has produced business records and sworn testimony establishing that each Plaintiff agreed to the Terms of Service containing an arbitration clause. Plaintiffs have not offered any admissible evidence to the contrary: they offer no different dates that Plaintiffs created or logged into accounts, they offer no different versions of what screens Plaintiffs saw during the four iterations, and they offer no different terms of service other than the terms of service that contain the mandatory arbitration provision. Their sole response—a generalized assertion that Mr. Prior is "not credible"—is precisely the type of conclusory attack that courts reject as insufficient under Rule 56. Without *evidence*, Plaintiffs cannot create a genuine dispute of material fact.

G. Partner League Affiliation with sPay

The Court's concern about inferring league affiliation with sPay is misplaced. **Exhibit B**, Dec. 3, 2025 Pre-Mot. Conf. Tr. at 38:14-18 ("I can't adjudicate this unless I have absolute proof" and requiring "a document that establishes that your client and that league that they signed up for, that that league is a customer of your client's . . . ."). Plaintiffs' own pleadings and testimony eliminate any dispute as to whether the leagues they signed up for were sPay customers:



**Judicial Admissions:** Plaintiffs alleged in their own Complaint that they registered through Sports Connect-powered websites and identified the specific leagues they used: Old Skewl Sports, Otisville Little League, Kennedy Park Little League, St. Cajetan Grammar School Athletics, and Sergeant Bluff Girls Softball. ECF No. 3, Compl. ¶¶ 26, 33, 51-56, 61-63, 64-69 (alleging registration through Sports Connect-powered websites through various Partner Leagues). These unambiguous admissions in the Complaint constitute judicial admissions that Plaintiffs cannot now controvert. *See Inn World Rep., Inc. v. MB Fin. Bank NA*, No. 21 2911 CV, 2022 WL 17841529, at *3 n.3 (2d Cir. Dec. 20, 2022).

**Depositions:** Each Plaintiff confirmed registration through Sports Connect or Dick's TSHQ. Buffington Dep. Tr. at 28:9–30:13, 35:5-6, 64:25-65:11 (acknowledging that SPAY00001162 listed Buffington's registrations with leagues through Sports Connect/Dick's TSHQ); Helmold Dep. Tr. at 19:16–18 (testifying first use of Sports Connect/Dick's TSHQ in June 2019), 26:16-19 (admitting to registering "15 times through Sports Connect" prior to April 2024), 26:24-27:9 (admitting to five additional registrations through Sports Connect after April 2024 and spending a combined $2,984 on registrations); Craig Dep. 16:21–17:16 (confirming West Hernando Little League and West Pasco Wolverines registrations were made through Sports Connect), 27:22-28:6 (explaining that while Ms. Craig did not initially realize her registrations with various leagues were through Sports Connect, she learned before filing the Complaint that these leagues "utilize Sports Connect for . . . the website itself . . ."); Kramer Dep. Tr. at 31:15–18 (admitting to other registrations through Sports Connect prior to April 2024 than those disclosed in the Complaint), 32:12-33:16 (admitting that the four registrations disclosed in SPAY00001162 were made through Sports Connect); 42:18–43:6 (admitting to signing up with Sergeant Bluff girls' softball through Sports Connect at least two more times than listed in the Complaint).

**sPay's Production of Business Records:** sPay's has produced each Plaintiffs' account history, which each Plaintiff has access to on the Sports Connect platform. These records reflect the dates when each Plaintiff used Sports Connect or Dick's TSHQ to register a child. For the Court's convenience, we have attached these registration histories as **Exhibit D**, and replicated Plaintiff Buffington's registration history profile with the Otisville Little League below:



Hon. Philip M. Halpern
December 12, 2025
Page 10



In addition, at the Court's order, sPay recently produced documents confirming the dates when each Partner League that Plaintiffs registered with first began using Sports Connect or Dick's TSHQ—which all predate Plaintiffs' initial registrations.

These admissions and records conclusively establish that Plaintiffs used Sports Connect or its predecessor for these registrations. And, to state the obvious, if Plaintiffs had not used Sports Connect at all, then this lawsuit should be dismissed immediately as frivolous.

### III.   sPay's Requested Briefing Schedule

sPay respectfully requests the following summary judgment briefing schedule:

- January 23, 2026 – Deadline for sPay's opening brief;

- February 20, 2026 – Deadline for Plaintiffs' opposition brief; and

- March 13, 2026 – Deadline for sPay's reply brief.

We thank the Court for its consideration.



Hon. Philip M. Halpern
December 12, 2025
Page 11

Respectfully submitted,

*s/ Dylan P. Kletter*
Dylan P. Kletter

*Counsel for Defendant sPay, Inc. d/b/a Stack Sports*

cc:        All Parties via ECF

In light of the representations herein concerning confidentiality designations for the documents filed provisionally under seal, and defendant's consent to public filing, the motions to seal are denied as moot (Doc. 53; Doc. 69) and the documents filed provisionally under seal may be publicly filed. The Clerk of Court is respectfully directed to terminate the pending motions (Doc. 53 & Doc. 69) and unseal the provisionally sealed documents (Doc. 54 & Doc. 70).

Plaintiffs are directed to file a response to Defendant's letter by December 22, 2025.

SO ORDERED.

_____
Philip M. Halpern
United States District Judge

Dated:  White Plains, New York
         December 15, 2025